UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES of the LOCAL 854 PENSION FUND and the LOCAL 854 HEALTH & WELFARE BENEFITS FUND,<br><br>      Plaintiffs,<br><br>    v.<br><br>KENNETH BARRETT, GINA BARRETT, KERRY BARRETT, 745 WHITTIER STREET LLC, XYZ CORPORATIONS 1-10, and JANE AND JOHN DOES 1-10,<br><br>      Defendants. | Case No.: |

## COMPLAINT

Plaintiffs, the Trustees (the "Trustees") of the Local 854 Pension Fund (the "Pension Fund") and the Local 854 Health & Welfare Benefits Fund (the "Welfare Fund") (collectively, the "Funds"),[1] by and through their undersigned counsel, bring this action against Defendants Kenneth Barrett ("Ken"), Gina Barrett ("Gina"), Kerry Barrett ("Kerry"), 745 Whittier Street LLC ("745 Whittier"), fictitious entities XYZ Corporations 1-10, and fictitious individuals Jane and John Does 1-10, and allege as follows:

**I. INTRODUCTION**

  1. This is an action to collect delinquent contributions and withdrawal liability owed by Advance Transit, an employer that was previously obligated to remit contributions to the Funds.

---

[1] As set forth in Paragraph 18 below, Ken is a member of the Funds' Board of Trustees, but has recused himself in connection with this matter and is therefore not a plaintiff.

2. The United States District Court for the Eastern District of New York previously entered two judgments (the "Judgments") for these amounts against Advance Transit: an October 14, 2020 consent judgment for $1,186,741.12 (plus interest and liquidated damages) (the "Delinquent Contributions Judgment") in *Demopoulos v. Advanced Transit Co.*, No. 2:19-cv-4240-JS-ARL (E.D.N.Y.) (the "Delinquent Contributions Action"); and a January 11, 2022 default judgment for $662,611.22 (the "Withdrawal Liability Judgment") in *Demopoulos v. Advance Transit Co., Inc.*, No. 2:20-cv-05186-DRH-ARL (E.D.N.Y.) (the "Withdrawal Liability Action").

3. Because Advance Transit is judgment-proof, in this action, the Trustees seek to enforce Advance Transit's obligations to the Funds against Advance Transit's owner, an affiliated company, and various fraudulent transferees.

4. Shortly after the Trustees commenced the Delinquent Contributions Action, and at a time when Advance Transit knew a withdrawal liability assessment was imminent, Advance Transit's owner began dissipating Advance Transit's assets in a manner designed to enrich himself and his family members at the expense of the Funds.

5. Specifically, Advance Transit's owner, Ken, diverted corporate assets to: (i) pay his personal expenses, including golf and beach club memberships; (ii) reimburse undocumented loans he had purportedly made to the company; (iii) increase severalfold the salaries the company paid him and his wife; and (iv) issue himself, his wife, and his sister one-time bonuses for no conceivable business purpose.

6. In this action, the Trustees seek a finding that these transfers were fraudulent and/or voidable, as applicable, and an order requiring disgorgement of those amounts to the Funds in partial satisfaction of the Judgments.

7. The Trustees also seek a judgment that Ken and 745 Whittier are jointly and severally liable for the Judgments.

8. Ken exercised complete dominion and control over Advance Transit, which failed to observe basic corporate formalities and transferred assets to Ken and his family members without adequate consideration to avoid creditors like the Trustees. In addition to the fraudulent and/or voidable transfers above, Ken failed to maintain proper corporate records, and upon information and belief, falsified financial statements and commingled corporate and personal assets.

9. Ken also exercised complete dominion and control over 745 Whittier, a company owned by his wife and her sister that owned the property on which Advance Transit conducted its operations.

10. Advance Transit paid all taxes and insurance for 745 Whittier, and was solely responsible for making and paying for all structural and non-structural repairs, performing maintenance, and curing any building violations identified by governing authorities.

11. Although nominally distinct entities, in actuality, 745 Whittier was simply an extension of Advance Transit. In addition to having common ownership, Ken caused 745 Whittier to pledge its assets as collateral to obtain the financing necessary to keep Advance Transit afloat, in exchange for which Ken and Advance Transit guaranteed 745 Whittier's debts. Upon information and belief, the two also shared common management, in that it was Ken who directed 745 Whittier's affairs and controlled its finances, and his sister-in-law who acted as Advance Transit's general counsel.

12. Additionally, at all relevant times, Ken was a fiduciary as to the contributions and withdrawal liability Advance Transit owed to the Funds. When Ken caused Advance Transit to

transfer monies to third parties, including in connection with the transfers above, he misappropriated plan assets and therefore breached his fiduciary duties to the Funds.

13. Based on this conduct, the Trustees seek to: (i) recover the salaries, bonuses, and other payments Advance Transit fraudulently made to Ken, Gina, and Kerry; (ii) pierce the corporate veil of Advance Transit and hold Ken personally liable for the Judgments; (iii) hold 745 Whittier jointly and severally liable for the Judgments as Advance Transit's alter ego; and (iv) recover all amounts transferred by Advance Transit that constitute plan assets.

## II. PARTIES

14. The Funds are employee benefit plans within the meaning of 29 U.S.C. §§ 1002(1) to (3) and 1132(d)(1), and multi-employer plans within the meaning of 29 U.S.C. §§ 1002(37) and 1145. The Funds' principal office is located at 655 Third Avenue, Suite 122, New York, New York 10017. Prior to December 1, 2022, the Funds' principal office was located at 585 Stewart Avenue, Suite 330, Garden City, New York 11530.

15. The Welfare Fund provides health and welfare benefits to qualified participants and their dependents.

16. The Pension Fund provides pension and related benefits to qualified participants and their dependents. As of August 31, 2021, the Pension Fund experienced a mass withdrawal due to the complete withdrawal of substantially all contributing employers.

17. The Funds are governed by Agreements and Declarations of Trust that provide, among other things, that "[c]ontributions made or required to be made pursuant to a Collective Bargaining Agreement or other agreement are plan assets from the date they are required to be contributed, whether or not they are paid to or received by the Fund[s]."

18. The Trustees are fiduciaries of the Funds, and bring this action in their capacities as fiduciaries pursuant to 29 U.S.C. §§ 1002(21) and 1451(a)(1). Ken, while a member of the Funds' Board of Trustees, is not a plaintiff in this action because he is recused from all decisions concerning the subject matter of this action.

19. Non-party Advance Transit is a domestic corporation that had its principal place of business at 1340 Lafayette Avenue, Bronx, New York 10474 (the "Property"). At all relevant times, Ken has been Advance Transit's sole owner.

20. Ken is an individual residing at 7 Laurel Crescent, Manorville, New York 11949.

21. Gina is an individual residing at 7 Laurel Crescent, Manorville, New York 11949. At all relevant times, Gina and Ken have been husband and wife.

22. Kerry is an individual residing at 217 India Street #3R, Brooklyn, New York 11222. Kerry is Ken's sister.

23. 745 Whittier is a domestic limited liability company having its principal place of business at 111 Bayport Avenue, Bayport, New York 11705. At all relevant times, Gina and her sister, Antoinette Lanteri, each held a 50% membership interest in 745 Whittier.

24. Defendants XYZ Corporations 1-10 are fictitious entities whose identities are not currently known to the Plaintiffs, but who, upon information and belief: (i) were under common control with Advance Transit within the meaning of 29 U.S.C. § 1301(b)(1); (ii) were single employers, alter egos, and/or successors of Advance Transit; and/or (iii) received assets that were fraudulently conveyed by Advance Transit.

25. Defendants Jane and John Does 1-10 are fictitious individuals whose identities are not currently known to the Plaintiffs, but who, upon information and belief: (i) were sole

proprietorships under common control with Advance Transit within the meaning of 29 U.S.C. § 1301(b)(1); and/or (ii) received assets that were fraudulently conveyed by Advance Transit.

## III. JURISDICTION AND VENUE

26. This Court has personal jurisdiction over the Defendants because they reside in and/or conduct business in the State of New York.

27. This Court has subject matter jurisdiction over Counts I, II, IX, and X pursuant to 28 U.S.C. § 1331, ancillary jurisdiction over Counts III to VI, and supplemental jurisdiction over the remaining counts because they form part of the same case or controversy.

28. Venue is proper in the Southern District of New York pursuant to 29 U.S.C. §§ 1145 and 1451(d) because the Funds are administered in this District.

## IV. BACKGROUND

### A. Advance Transit's Operations

29. Advance Transit provided door-to-door paratransit services as part of New York City's "Access-A-Ride" program, pursuant to a contract with the Metropolitan Transit Authority (the "MTA").

30. Advance Transit did not have a board of directors or maintain minutes or records of any corporate decisions. Its management consisted of three non-union employees: Ken was its owner, president, and project manager; Gina was a clerk; and Kerry was Ken's assistant and office clerk. The remaining employees were union laborers covered by a collective bargaining agreement (the "CBA") that required Advance Transit to remit contributions to the Funds on behalf of those employees who performed covered work.

31.     Advance Transit operated from 1340 Lafayette Avenue, Bronx, New York 10474 (the "Property"), which it leased from 745 Whittier, a company owned jointly by Ken's wife (Gina) and her sister (Antoinette Lanteri).

32.     The two companies shared overlapping management and service providers.  Ken was in charge of and conducted 745 Whittier's affairs, and its owners played no role in its operations other than executing documents at Ken's behest.  Antoinette Lanteri served as Advance Transit's general counsel, and the two companies have been jointly represented in other legal matters.

33.     On several occasions, Ken caused 745 Whittier to pledge the Property as collateral in order to obtain millions of dollars of mortgage financing that, upon information and belief, was used to sustain Advance Transit's operations.  Ken and Advance Transit, in turn, guaranteed 745 Whittier's mortgages, which Advance Transit repaid by making monthly "rent" payments; paid all expenses 745 Whittier ever incurred (including taxes and insurance); and was solely responsible for making and paying for all structural and non-structural repairs, performing maintenance, and curing any building violations identified by governing authorities.

**B.     Events Leading to the Delinquent Contributions Action and Judgment**

34.     In mid-2019, Ken learned that the MTA would not renew its contract with Advance Transit.  Because the contract was Advance Transit's sole source of revenue, Ken determined that Advance Transit could no longer remain in business and immediately commenced winding down the company's affairs.

35.     As a trustee of the Pension Fund for many years, Ken knew that this would constitute a complete withdrawal from the Pension Fund, and thereby cause Advance Transit to become obligated to pay withdrawal liability.

36. Shortly thereafter, on July 23, 2019, the Trustees filed the Delinquent Contributions Action, which ultimately culminated in the entry on October 14, 2020 of the Delinquent Contributions Judgment.

37. Shortly after the Delinquent Contributions Action was filed, Ken, Gina, and Kerry orchestrated a scheme to personally enrich themselves using Advance Transit's remaining assets. The transfers served no conceivable business purpose, other than to enrich Ken, Gina, and Kerry at the expense of Advance Transit's creditors, such as the Funds. Specifically:

   a. On or about August 30, 2019, Advance Transit doubled Ken's biweekly salary from approximately $5,000 to over $10,000 and increased Gina's biweekly salary from approximately $930 to over $5,000.

   b. On December 20, 2019, Advance Transit issued several one-time bonuses: $100,000 to Ken, $10,000 to Gina, and $10,000 to Kerry.

   c. In September and December 2019, Advance Transit paid $19,092 for Ken's personal memberships to Hampton Hills Golf & Country Club and The Ocean Resort at Bath and Tennis.

   d. Between April and August 2019, Advance Transit purported to repay $360,000 in undocumented loans to Ken: $50,000 on April 18, 2019, $300,000 on May 22, 2019, $5,000 on August 21, 2019, and $5,000 on August 22, 2019.

   e. In December 2020, Advance Transit purported to repay an additional $45,000 in undocumented loans to Ken: $5,000 on December 3, 2020 and $40,000 on December 8, 2020.

38. Advance Transit received no additional value from any of these transactions. In fact, Advance Transit ceased all covered operations in October 2019, when its union laborers were laid off and its MTA contract ended. It nevertheless increased severalfold the salaries paid to Ken and Gina and continued to pay them after October 2019; issued one-time bonuses to Ken, Gina, and Kerry, which it had never issued in the past; and continued to pay 745 Whittier approximately $36,000 per month and advanced over $60,000 in property taxes for the following year, despite no longer conducting any operations from that location.

    C.    **The Withdrawal Liability Action and Judgment**

39. On April 21, 2020, the Trustees assessed Advance Transit with $436,526 in withdrawal liability as a result of the permanent cessation of its obligation to contribute to the Pension Fund. Advance Transit failed to make any of the required payments, despite being given an opportunity to cure on June 1, 2020, at which point the Trustees accelerated the liability. At no point did Advance Transit request a review or commence arbitration to challenge the assessment, the deadlines for which have since lapsed.

40. On October 27, 2020, the Trustees filed the Withdrawal Liability Action, and on January 11, 2022, the Withdrawal Liability Judgment was entered against Advance Transit in the amount of $662,611.22.

41. To date, no amounts have been remitted toward the Judgments and Advance Transit has claimed to be judgment proof.

## COUNT I

### Breach of Fiduciary Duty Against Ken
### Pursuant to 29 U.S.C. § 1109

42. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

43. The CBA requires Advance Transit to remit contributions and dues to the Funds pursuant to the Trust Agreements.

44. The Trust Agreements vest title to all monies due to the Funds in the respective Trustees and deems such amounts assets of the respective Funds.

45. Pursuant to the Trust Agreements, Ken was in possession of contributions, withdrawal liability, and other amounts due and owing to the Funds.

46. Pursuant to 29 U.S.C. § 1109, Ken was a fiduciary of the Funds because at all relevant times, he was the sole owner of Advance Transit and, upon information and belief, exercised authority or control respecting the management and disposition of Advance Transit's assets.

47. Ken breached his fiduciary duties to the Funds by unlawfully transferring plan assets, and as a result, is personally liable to the Funds for such amounts. Specifically, at the time the contributions and/or withdrawal liability were due and owing, Ken caused Advance Transit to transfer monies to other third parties, including himself, his family members, 745 Whittier, and others. Because each of those transfers was of plan assets, each transfer constituted a separate breach of fiduciary duty.

48. Plaintiffs demand judgment against Ken, as a fiduciary of the Funds, for $1,186,741.12 in outstanding contributions, $436,526 in withdrawal liability, and such other relief as the Court may consider just and equitable.

## COUNT II

**Transactions to Evade or Avoid Withdrawal Liability Against Ken, Gina, and Kerry Pursuant to 29 U.S.C. § 1392**

49. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

10

50.    29 U.S.C. § 1392 states: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."

51.    As of mid-2019, Ken became aware that Advance Transit would be assessed with withdrawal liability as a result of his decision to shut down the business.

52.    Thereafter, Ken initiated the transactions set forth in Paragraph 37, which served no cognizable business purpose other than to enrich himself and his family members.

53.    A primary purpose of the transactions was to evade or avoid having to pay the monies to the Pension Fund on account of the withdrawal liability Ken knew would be assessed.

54.    As a result, the transactions are void under 29 U.S.C. § 1392(c), and the recipients of these monies must disgorge the proceeds.

55.    Plaintiffs demand judgment against Ken, Gina, and Kerry voiding the transactions set forth in Paragraph 37 and requiring them to disgorge the proceeds to the Pension Fund.

## COUNT III

### Constructively Fraudulent Conveyance Against Ken, Gina, and Kerry Pursuant to Former N.Y. Debtor & Creditor Law §§ 273, 273-a, 278(1)[2]

56.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

57.    Plaintiffs are creditors of Advance Transit.

58.    Through the transactions described in Paragraph 37(a)–(d), Advance Transit transferred all or substantially all of its assets to Ken, Gina, and Kerry for no or inadequate consideration at a time when Advance Transit was a defendant in the Delinquent Contributions Action and anticipated it would be liable for withdrawal liability.

---

[2] Former Article 10 of the N.Y. Debtor & Creditor Law was repealed as of April 4, 2020, but continues to apply to actions to avoid transactions occurring prior to that date.

59.     Advance Transit failed to pay any amount of the resulting Judgments entered in the Delinquent Contributions and Withdrawal Liability Actions, the entire amounts of which remain outstanding.

60.     Upon information and belief, Advance Transit was insolvent at the time of the transfers set forth in Paragraph 37(a)–(d) or became insolvent as a result of those transfers within the meaning of former N.Y. Debtor & Creditor Law § 271(1), because the value of Advance Transit's assets was (or became) less than the amount required to pay the amount of the Judgments.

61.     Therefore, Advance Transit's transfers are constructively fraudulent under former N.Y. Debtor & Creditor Law §§ 273 and 273-a.

62.     Plaintiffs hereby demand judgment against Ken, Gina, and Kerry declaring the transfer of assets from Advance Transit to Ken, Gina, and Kerry as set forth in Paragraph 37(a)–(d) as null and void and avoiding the transfers completely pursuant to former N.Y. Debtor & Creditor Law § 278(1).

## COUNT IV

### Intentional Fraudulent Conveyance Against Ken, Gina, and Kerry
### Pursuant to Former N.Y. Debtor & Creditor Law §§ 276, 276-a, 278(1)

63.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

64.     Ken caused Advance Transit to fraudulently convey its assets to Ken, Gina, and Kerry for the inequitable purpose of shielding those assets and impeding Plaintiffs' attempts to collect the amounts demanded in the Delinquent Contributions and/or Withdrawal Liability Actions.

65.     Ken and Advance Transit knew and actually intended that the transfers set forth in Paragraph 37(a)–(d) would hinder, delay, or defraud Plaintiffs by making unavailable the assets

with which Advance Transit could have paid the resulting Judgments entered in those actions. The transfers were not in good faith nor in the ordinary course of any party's business, and harmed Plaintiffs by frustrating Plaintiffs' ability to collect on the Judgments.

66. The transfers were for inadequate consideration, were made to individuals with whom Ken shared a close familial relationship, resulted in Advance Transit's insolvency pursuant to former N.Y. Debtor & Creditor Law § 271(1), and were not made in the ordinary course of business.

67. Moreover, Ken retained control of the assets transferred to himself and his wife, with whom he shares joint control over the couple's finances.

68. Therefore, Advance Transit's transfers are fraudulent under former N.Y. Debtor & Creditor Law § 276.

69. Plaintiffs hereby demand judgment against Ken, Gina, and Kerry declaring the transfers of assets set forth in Paragraph 37(a)–(d) from Advance Transit to Ken, Gina, and Kerry as null and void and avoiding the transfers completely pursuant to former N.Y. Debtor & Creditor Law § 278(1), as well as reasonable attorneys' fees and costs in connection with this action under former N.Y. Debtor & Creditor Law § 276-a.

## COUNT V

**Voidable Transfer as to Present Creditor Against Ken
Pursuant to N.Y. Debtor & Creditor Law § 274**

70. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

71. Ken caused Advance Transit to transfer $45,000 (as set forth in Paragraph 37(e)) to himself at a time when Advance Transit was insolvent within the meaning of N.Y. Debtor & Creditor Law § 271(b), in that it did not pay the amount of the Delinquent Contributions Judgment when it became due.

72. Ken made the transfers in December 2020, after Plaintiffs obtained the Delinquent Contributions Judgment and filed the Withdrawal Liability Action on account of Advance Transit's failure to pay its assessed withdrawal liability.

73. Advance Transit did not receive reasonably equivalent value in exchange for the transfers.

74. Plaintiffs hereby demand judgment against Ken declaring the transfers of assets set forth in Paragraph 37(e) from Advance Transit to Ken as null and void and avoiding the transfers completely, and allowing Plaintiffs to levy execution upon these amounts via a judgment against Ken, plus statutory interest, attorneys' fees and costs pursuant to N.Y. Debtor & Creditor Law § 276.

## COUNT VI

**Voidable Transfers as to Present or Future Creditor Against Ken Pursuant to N.Y. Debtor & Creditor Law § 273**

75. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

76. Ken caused Advance Transit to transfer $45,000 (as set forth in Paragraph 37(e)) with the intent to hinder, delay, and/or defraud the Funds' collection of the Delinquent Contributions Judgment that had been entered and/or the amounts he knew, or reasonably should have known, would be awarded in the Withdrawal Liability Action.

77. Advance Transit did not receive reasonably equivalent value in exchange for the transfers, and Ken retained sole possession and control of the transferred monies.

78. Plaintiffs hereby demand judgment against Ken declaring the transfers of assets set forth in Paragraph 37(e) from Advance Transit to Ken as null and void and avoiding the transfers completely, and allowing Plaintiffs to levy execution upon these amounts via a

judgment against Ken, plus statutory interest, attorneys' fees and costs pursuant to N.Y. Debtor & Creditor Law § 276.

## COUNT VII

### Piercing the Corporate Veil Against Ken Pursuant to New York State Law

79. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

80. Ken exercised complete dominion and control over Advance Transit, including in making the transfers set forth in Paragraph 37 to personally enrich himself and his family at the expense of the Funds.

81. Specifically, Ken used corporate assets for his own personal benefit, including to pay for golf and beach club memberships, increase salary and bonus payments to himself, and repay himself for undocumented loans to Advance Transit.

82. Upon information and belief, at all relevant times, Ken, in operating Advance Transit, ignored basic corporate formalities and did not organize a board of directors, hold board meetings, or maintain proper books and records.

83. Ken also undercapitalized Advance Transit. Upon information and belief, because of Ken's transfers from Advance Transit, at all relevant times the liabilities of Advance Transit exceeded the amount of its assets.

84. Further, Ken transferred Advance Transit's assets to himself, his relatives, and entities owned by his relatives—including Gina, Kerry, and 745 Whittier—at a time when Advance Transit was insolvent and a defendant in the Delinquent Contributions and/or Withdrawal Liability Actions.

85. Specifically, Ken caused Advance Transit to transfer its assets to Gina and Kerry (in the form of increased salary and/or bonus payments), so that, among other things, Ken could

avoid being held personally liable for the Judgments. Thus, these transfers were made for Ken's personal benefit, as opposed to Advance Transit's benefit.

86. Ken also caused Advance Transit to make rent payments and property tax payments to 745 Whittier in order to, among other things, avoid paying Plaintiffs pursuant to the Judgments.

87. Based on the foregoing, Plaintiffs request that the Court pierce the corporate veil of Advance Transit to hold Ken personally liable for the Judgments because Ken abused the corporate form in order to deprive Advance Transit of funds needed to satisfy the Judgments.

## COUNT VIII

### Alter Ego Liability Against 745 Whittier
### Pursuant to New York State Law

88. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

89. 745 Whittier is liable for the amount of the Judgments owed by Advance Transit because 745 Whittier is an alter ego of Advance Transit.

90. 745 Whittier is the alter ego of Advance Transit because, on information and belief, the two businesses served the same purpose, *i.e.*, they facilitated the service of paratransit operations; 745 Whittier had one property (the Property), which it leased in its entirety to Advance Transit, and from which Advance Transit maintained all of its operations; 745 Whittier had no employees but its owners were employees of Advance Transit; there is commonality of management between them, *e.g.*, they are managed by the same group of individuals who are members are the same family; there is commonality of operations between them because they both operated out of the Property; and there is commonality of supervision and ownership because they are owned, managed, and controlled, in whole or in part, by Ken and his wife Gina.

91. Therefore, 745 Whittier constitutes an alter ego of Advance Transit and is jointly and severally liable with Advance Transit for all debts owed to the Funds.

92. Plaintiffs demand judgment against 745 Whittier for the outstanding Judgments, and all other relief that the Court may deem just and appropriate.

### COUNT IX

**Breach of Fiduciary Duty Against Jane and John Does 1-10
Pursuant to 29 U.S.C. § 1109**

93. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

94. Jane and John Does 1-10 are fiduciaries of the Funds because, upon information and belief, they exercised authority or control respecting the management and disposition of the Funds' assets.

95. Jane and John Does 1-10 breached their fiduciary duties to the Funds by, upon information and belief, unlawfully withholding plan assets, and as a result, are liable to the Funds for such amounts.

96. Plaintiffs hereby demand judgment against Jane and John Does 1-10 as fiduciaries of the Funds, for $1,186,741.12 in outstanding contributions, $436,526 in withdrawal liability, and such other relief as the Court may consider just and equitable.

### COUNT X

**Controlled Group Liability Against XYZ Corporations 1-10
and Jane and John Does 1-10
Pursuant to 29 U.S.C. § 1451(a)(1)**

97. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

98. Upon information and belief, as of October 1, 2019, fictitious entities XYZ Corporations 1-10 were trades or businesses under common control with Advance Transit within the meaning of 29 U.S.C. § 1301(b)(1). Upon information and belief, as of October 1, 2019,

17

fictitious individuals Jane and John Does 1-10 operated a sole proprietorship under common control with Advance Transit within the meaning of 29 U.S.C. § 1301(b)(1). As members of Advance Transit's controlled group, XYZ Corporations 1-10 and Jane and John Does 1-10 are jointly and severally liable with Advance Transit for the withdrawal liability resulting from Advance Transit's complete withdrawal from the Pension Fund.

99. Plaintiffs further demand judgment against XYZ Corporations 1-10 and Jane and John Does 1-10 in the amount of $662,611.22 for withdrawal liability owed to the Pension Fund, as well as liquidated damages, interest, attorneys' fees and costs, and all other relief that the Court may deem just and appropriate.

Dated: February 10, 2023                    **PROSKAUER ROSE LLP**

By:  */s/ Neil V. Shah*
           Neil V. Shah
Sydney L. Juliano
Eleven Times Square
New York, New York 10036
(212) 969-3028
(212) 969-3142
nshah@proskauer.com
sjuliano@proskauer.com

*Counsel for the Plaintiffs*