UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
TRUSTEES OF THE LOCAL 854 PENSION        :
FUND, et al.,                            :
                                         :     23cv1160 (DLC)
                        Plaintiffs,      :
            -v-                          :     OPINION AND
                                         :        ORDER
KENNETH BARRETT, et al.,                 :
                                         :
                        Defendants.      :
                                         :
---------------------------------------- X

APPEARANCES:

For plaintiffs:

Sydney Juliano
Neil V Shah
Proskauer Rose LLP
11 Times Square
New York, NY 10036

For defendant Kenneth Barrett:

Jennifer Suzanne Smith
Law Offices of Jennifer Smith
One Liberty Plaza
165 Broadway, 23rd Floor
New York, NY 10006

Aaron Harold Pierce
Pierce & Kwok LLP
299 Broadway
Suite #1405
New York, NY 10007

David Patrick Ofenloch
1350 Broadway
New York, NY 10018

Jane B. Jacobs
Tarter Krinksy & Drogin LLP
1350 Broadway

Ste 11th Floor
New York, NY 10018

For defendants Gina Barrett and 745 Whitter Street LLC:

Zoe Eva Jasper
Jasper & Jasper, PLLC
17 State Street
Suite 4000
New York, NY 10004

DENISE COTE, District Judge:

The Trustees ("Trustees") of the Local 854 Pension Fund and Local 854 Health & Welfare Benefits Fund ("Funds") have moved to amend the complaint to add new parties and claims. The defendants have cross-moved to dismiss certain claims in the original complaint and have opposed the motion to amend. For the following reasons, the Trustees' motion is granted and the defendants' motions are denied.

## Background

The following facts are taken from the complaint and the proposed amended complaint ("FAC"). They are assumed to be true for purposes of this Opinion.

The Trustees filed this action against defendants Kenneth Barrett, his wife Gina Barrett, and 745 Whittier Street LLC ("745 Whittier") to collect delinquent contributions and

withdrawal liability owed by Advance Transit.[1]  Advance Transit, a corporation which operated from an office in the Bronx, provided door-to-door transit services as part of New York City's Access-A-Ride program pursuant to a contract with the Metropolitan Transit Authority ("MTA").  Ken was Advance Transit's owner and Gina worked in the business as a clerk.

In mid-2019, Ken learned that the MTA would not renew its contract with Advance Transit.  As Ken wound down its operations, he used Advance Transit assets to pay increased salaries to himself and Gina and to pay one-time bonuses.  Ken also used corporate assets to pay his personal expenses such as golf and beach club memberships and to repay undocumented loans he had purportedly made to Advance Transit.  Advance Transit ceased operations in October 2019.

Two judgments have been entered against Advance Transit on behalf of the Funds.  There is a 2020 judgment for delinquent contributions in the amount of over $1.1 million, and a 2022 judgment in the amount of over $600,000 for withdrawal liability.  Advance Transit has not paid these judgments and is judgment proof.

---

[1] The complaint named Kerry Barrett, Ken's sister, as a defendant.  The claims against Kerry were voluntarily dismissed in January of 2024.

3

745 Whittier is a limited liability company with its principal place of business in Bayport, New York. Gina Barrett and her sister Antionette Lanteri co-owned 745 Whittier from 2013 to 2021, when they began to share ownership with their brother Michael Schiano Dicola. Ken Barrett is in charge of 745 Whittier's affairs. Lanteri served as its managing member while serving as Advance Transit's general counsel. 745 Whittier owned and leased the Bronx office to Advance Transit. In June of 2021, 745 Whittier sold the Bronx property. Ken and Advance Transit had guaranteed 745 Whittier's mortgages, for which Advance Transit had made monthly payments. Advance Transit had also paid all expenses incurred by 745 Whittier, including taxes and insurance.

The three siblings who own 745 Whittier also own 481 Court Street Realty Corp. ("481 Court"). It owns a condominium building in Brooklyn.

Ken formed KJB Management LLC ("KJB") in May 2012 and is its sole owner. It owns property in Cleveland, Ohio. Ken formed KB3 Realty LLC ("KB3") in 2018 and is its sole owner. It also owns property in Cleveland.

In August of 2021, the Pension Fund experienced a mass withdrawal. As a result, all ERISA employers, including Advance Transit, became obligated to pay what is termed "reallocation

4

liability." In August of 2023, Advance Transit was notified that its reallocation liability is calculated to be over $1.7 million. Advance Transit did not commence arbitration to dispute this amount by May 26, 2024, its deadline for doing so.

The Trustees filed this action against Ken and Gina Barrett and 745 Whittier on behalf of the Funds on February 10, 2023. The complaint pleads ten claims. It brings a breach of fiduciary duty claim against Ken pursuant to 29 U.S.C. § 1109; claims against Ken and Gina pursuant to 29 U.S.C. § 1392 for transactions to evade liability, pursuant the N.Y. Debtor & Creditor Law ("D&C Law") §§ 273 and 278 for constructive fraudulent conveyance, and pursuant to D&C Law §§ 276 and 278 for intentional fraudulent conveyance; two claims against Ken pursuant to D&C Law §§ 273 and 274 for voidable transfers; and a claim against Ken to pierce the corporate veil and against 745 Whittier for alter ego liability. The final two claims are brought against unnamed defendants.

On February 16, 2024, the Trustees sought leave to amend. They were granted leave on February 22 to file a motion to amend.[2]

---

[2] On February 22, 2024, the Magistrate Judge also administratively closed a motion to dismiss filed on May 8, 2023.

On March 8, the Trustees moved to amend their complaint, attaching the FAC. They seek to add a claim against Advance Transit for reallocation liability pursuant to 29 U.S.C. § 1451 and to pierce its corporate veil to hold 745 Whittier liable as its alter ego. They also seek to add a claim against Lanteri for breach of fiduciary duty. Finally, they seek to add three defendants as controlled group members: KJB, KB3 and 481 Court.

On April 5, Ken Barrett opposed the motion to amend and also sought dismissal of certain claims pleaded in the original complaint. He seeks dismissal from the original complaint of the breach of fiduciary duty claim brought against him and the claim that 745 Whittier is Advance Transit's alter ego. Also on April 5, Gina Barrett and 745 Whittier opposed the motion to amend and moved as well to dismiss the claim that 745 Whittier is the alter ego of Advance Transit.

Magistrate Judge Jennifer Willis has been supervising discovery, which is now stayed. On December 5, 2025, this action was transferred to this Court.

## Discussion

Whether measured by the standard that prevails under Rule 16, which is good cause, or Rule 15, which allows leave to amend to be freely given, amendment is appropriate here. See Rule 15(a)(2), Fed. R. Civ. P.; Rule 16(b), Fed. R. Civ. P.;

6

Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 833 (2d Cir. 2019) (Rule 15(a)(2)); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007) (Rule 16(b)). As described below, none of the proposed amended claims is futile, each of them relates to the core of the dispute described in the original complaint, and the Trustees have been sufficiently diligent in bringing these claims. In addition, the defendants who have opposed the motion have not shown that they will be unfairly prejudiced by the amendment. The defendants' arguments regarding the adequacy of the pleading of each of the claims are addressed next.

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the

complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).

I.    Reallocation Liability

The moving defendants contend that the FAC fails to plead that Advance Transit is liable for reallocation liability under ERISA for two independent reasons, citing 29 C.F.R. § 4219.12(c). They contend such liability can only occur when an employer withdraws from a fund pursuant to an agreement with other employers, and also that such liability cannot be imposed since Advance Transit had been completely liquidated by 2020, over a year before the 2021 mass withdrawal.

Under 29 U.S.C § 1399, which governs notice and collection of withdrawal liability, "an employer shall pay" the amount it owes as calculated by the plan sponsor using the methods set forth in the statute. 29 U.S.C § 1399(c)(1)(A)(i). Upon an employer's withdrawal, the plan sponsor must notify the employer of the amount of its withdrawal liability, establish a schedule for payment, and demand payment in accordance with that schedule. Id. § 1399(b)(1). Should the employer dispute the amount of its liability, it must request a review from the sponsor within 90 days of the sponsor's demand. Id. § 1399(b)(2)(A). Under § 1401, if the parties cannot resolve that dispute, arbitration is mandatory, and it must be initiated

within 60 days after the earlier of either (1) notification by the plan sponsor of the result of the requested review or (2) 120 days of the date review was requested. Id. § 1401(a)(1).

ERISA[3] institutes a "pay-first-question-later" regime for employer liability. Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990) (citation omitted). "Notwithstanding any request for review or demand of arbitration, the uncured failure to make overdue payments constitutes a default." Id. at 261 (citing 29 U.S.C. § 1399(c)(5)); see also 29 U.S.C. § 1399(c)(2) (payments must be made notwithstanding any request for review of the amount of the liability); id. § 1401(d) (payments must be made until the arbitrator renders a final decision).

> If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

Id. § 1401(b)(1). Thus, where an employer does not timely seek to contest the amount assessed through an arbitration, "a default has occurred." Bowers, 901 F.2d at 263. Upon a default, a fund is "entitled to require immediate payment of the

---

[3] As amended by the Multiemployer Pension Plan Amendments Act of 1980.

entire withdrawal liability amount demanded plus interest." Id. at 265 (citing 29 U.S.C. § 1399(c)(5)).

Pension Benefit Guaranty Corporation ("PBGP") regulations on withdrawal liability are set forth at 29 C.F.R. § 4219. They define reallocation liability as "the amount of unfunded vested benefits allocated to an employer in the event of a mass withdrawal." 29 C.F.R. § 4219.2(b). The detailed method for calculating reallocation liability is set forth in 29 C.F.R. § 4219.15. Section 4219.12, which governs the liability of employers upon mass withdrawal, states the following:

> An employer shall be liable for reallocation liability if the employer withdrew pursuant to an agreement or arrangement to withdraw from a multiemployer plan from which substantially all employers withdrew pursuant to an agreement or arrangement to withdraw, or if the employer withdrew after the beginning of the second full plan year preceding the termination date from a plan that terminated by the withdrawal of every employer, and, as of the reallocation record date --
>
> (1) The employer has not been completely liquidated or dissolved.

29 C.F.R. § 4219.12(c).

The plaintiffs have pled that the Funds timely notified Advance Transit in August of 2023 of its reallocation liability. After Advance Transit failed to make mandatory payments, the Funds offered it an opportunity to cure the default, which it did not take. Advance Transit did not request review of its liability or demand arbitration within the statutory deadlines.

See 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)(1).  The plaintiffs therefore have pleaded that Advance Transit is in default regarding its reallocation liability and has violated its statutory obligation to make timely payments under ERISA's "pay-first-question-later" regime.

II.  Controlled Group Claims

The moving defendants argue that the FAC fails to plead that the three controlled group defendants are trades or businesses, instead of being merely investments.  This argument fails.

Section 1301(b)(1) provides that "all employees of trades or businesses . . . which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."  29 U.S.C. § 1301(b)(1).  For an activity to be a trade or business, the entity must engage in activity "(1) for the primary purpose of income or profit; and (2) with continuity and regularity."  UFCW Loc. One Pension Fund v. Enivel Props., LLC, 791 F.3d 369, 373 (2d Cir. 2015).  The FAC plausibly alleges that each of the entities functions as a business by pleading that they lease real property.  It is unnecessary for the FAC to use the specific term "trade" or "business" in order to state a claim.

The moving defendants next argue that the FAC fails to plead the existence of common ownership for 481 Court as of the date of Advance Transit's withdrawal from the Funds in 2019. This argument fails.  The FAC pleads that common ownership existed at "all relevant times," including at the time that Advance Transit withdrew from the Pension Fund.

III. Alter Ego Claim against 745 Whittier

The moving defendants argue that the FAC fails to plead an alter ego claim against 745 Whittier and therefore does not plead a breach of fiduciary duty claim against Lanteri or a controlled group claim against 481 Court.  They are wrong.

In the ERISA context, the alter ego doctrine "involves a flexible test that considers whether two enterprises have substantially identical management, business purposes, operations, equipment, customers, supervision, and ownership." Div. 1181 A.T.U.-New York Emps. Pension Fund By Cordiello v. City of New York Dep't of Educ., 910 F.3d 608, 618 (2d Cir. 2018) (citation omitted).  "Courts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined."  Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (citation omitted).  "The focus of the alter ego doctrine is on the existence of a disguised continuance or an attempt to avoid

[union obligations] through a sham transaction or technical change in operations." Cordiello, 910 F.3d at 618 (citation omitted). "[E]vidence of anti-union animus or an intent to evade union obligations may be germane." Lihli Fashions Corp. v. N.L.R.B., 80 F.3d 743, 748 (2d Cir. 1996) (citation omitted). Parallel existence of companies "is not an impediment to imposing alter ego status." UNITE, 629 F.3d at 288.

The FAC plausibly alleges that 745 Whittier is the alter ego of Advance Transit. Ken Barrett owned Advance Transit while controlling and operating 745 Whittier. 745 Whittier was co-owned by Ken's wife and her sister, who acted as both Advance Transit's general counsel and 745 Whittier's managing member. Advance Transit conducted its operations from 745 Whittier's property. Ken funded Advance Transit's operations by pledging 745 Whittier's property as collateral for financing through mortgages that Ken and Advance Transit guaranteed and repaid. At this stage, the allegations are sufficient to plead that Ken utilized 745 Whittier as a nominally distinct company in order to evade Advance Transit's financial obligations to the Funds.

None of the arguments made by the moving defendants succeeds in undermining this plausibly pleaded claim. The moving defendants principally contend that the two companies are not in the same business: 745 Whittier leased real estate and

Advance Transit provided paratransit services.  The defendants point out as well that Ken Barrett was not one of the family members listed as an owner of 745 Whittier.  The plaintiffs, however, have sufficiently alleged alter ego liability under the test set forth by the Second Circuit.

IV.   Timeliness

Ken Barrett moves to dismiss the breach of fiduciary duty claim brought against him on the ground that it is time-barred. He asserts that this claim accrued in October 2019 but was not filed within the three-year statute of limitations.

For several reasons, his motion is denied.  A final assessment of his affirmative defense that this claim is time-barred must await the completion of discovery.  See Meyer v. Seidel, 89 F.4th 117, 135 (2d Cir. 2023).  At this stage, however, it is useful to observe that the Trustees seek to rely on the six-year statute of limitation that applies to claims of fraud.  See 29 U.S.C. § 1113(2).  Moreover, the Trustees argue that they could not have filed this claim until they had assessed Advance Transit's withdrawal liability in April 2020 and it had failed to pay the amount due.  It was only at that point that the Trustees had the facts necessary to bring their claim, which they did well within the three-year statute of limitations on which Ken relies.

14

## Conclusion

The Trustee's March 8, 2024 motion to amend is granted.

The defendants' April 5, 2024 cross-motion to dismiss is denied.


Dated:     New York, New York
           January 12, 2026

_____
DENISE COTE
United States District Judge