UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
TRUSTEES OF THE LOCAL 854 PENSION        :
FUND, et al.,                            :
                                         :       23cv1160 (DLC)
                            Plaintiff,   :
        -v-                              :       OPINION AND
                                         :            ORDER
KENNETH BARRETT, et al.,                 :
                                         :
                            Defendants.  :
                                         :
---------------------------------------- X

APPEARANCES:

For plaintiffs:

Sydney Juliano
Neil V Shah
Proskauer Rose LLP
11 Times Square
New York, NY 10036

For defendants Kenneth Barrett, KB3 Realty LLC, KJB Management
LLC, and Advance Transit:

Jennifer Suzanne Smith
Law Offices of Jennifer Smith
One Liberty Plaza
165 Broadway, 23rd Floor
New York, NY 10006

For defendants Gina Barrett and 745 Whitter Street LLC:

Zoe Eva Jasper
Jasper & Jasper, PLLC
17 State Street
Suite 4000
New York, NY 10004

DENISE COTE, District Judge:

The Trustees ("Trustees") of the Local 854 Pension Fund and Local 854 Health & Welfare Benefits Fund ("Funds") filed this ERISA action against Advance Transit, its owner Kenneth Barrett, and their affiliates to collect funds owed by Advance Transit. The defendants have moved to dismiss the reallocation liability claim against Advance Transit in the second amended complaint ("SAC") and for partial reconsideration of the January 12, 2026 Opinion that denied a motion to dismiss. Trs. of Loc. 854 Pension Fund v. Barrett, No. 23CV1160 (DLC), 2026 WL 90170 (S.D.N.Y. Jan. 12, 2026) ("January 12 Opinion"). The Opinion is incorporated by reference, and familiarity with it is assumed. For the following reasons, the defendants' motions are denied.

## Background

The Trustees initially filed this action against Kenneth Barrett and others on February 10, 2023 to collect delinquent contributions and withdrawal liability owed by defendant Advance Transit. Kenneth Barrett owned Advance Transit, a corporation that provided door-to-door transit services as part of New York City's Access-A-Ride program pursuant to a contract with the Metropolitan Transit Authority ("MTA").

In mid-2019, Kenneth Barrett learned that the MTA would not renew its contract with Advance Transit. Advance Transit ceased

2

operations in October 2019.  Two judgments have been entered against Advance Transit on behalf of the Funds.  There is a 2020 judgment for delinquent contributions in the amount of over $1.1 million, and a 2022 judgment in the amount of over $600,000 for withdrawal liability.  Advance Transit has not paid these judgments and is judgment proof.

In August of 2021, the Pension Fund experienced a mass withdrawal.  As a result, all ERISA employers, including Advance Transit, became obligated to pay what is termed "reallocation liability."  In August of 2023, Advance Transit was notified that its reallocation liability for the mass withdrawal for the plan year ending on August 31, 2021 was calculated to be over $1.7 million ("First Reallocation Assessment").

On March 8, 2024, the Trustees moved to file a first amended complaint ("FAC").  They sought, among other things, to add a claim against Advance Transit for the First Reallocation Assessment pursuant to 29 U.S.C. § 1451.  On December 5, 2025, this action was transferred to this Court.  The January 12 Opinion granted the Trustees' motion to amend and denied defendants' cross motion to dismiss.  Barrett, 2026 WL 90170, at *5.  The plaintiffs filed the FAC the following day.

On February 18, 2026, Advance Transit moved to dismiss the FAC.  After instructing the plaintiffs that they would be

3

unlikely to have a further opportunity to amend, the plaintiffs filed the SAC on February 20.  The SAC added additional facts relevant to the reallocation liability claim against Advance Transit.  It clarified that Advance Transit had initiated arbitration to challenge the First Reallocation Assessment in June 2024, which was within the statutory deadline, and that on June 10, 2025, the Trustees voted to rescind the First Reallocation Assessment and determined that the Funds experienced a mass withdrawal for the plan year ending on August 31, 2022.  Following that determination, the arbitration over the First Reallocation Assessment was dismissed.  Then, on July 21, 2025, the Funds notified Advance Transit that its reallocation liability for the 2022 plan year is calculated to be over $1.8 million ("Second Reallocation Assessment").  On October 10, Advance Transit timely requested a review of the Second Reallocation Assessment, which was denied on February 4, 2026.  The SAC seeks, inter alia, interest and liquidated damages accrued from missed payments for the now-rescinded First Reallocation Assessment and the missed payments plus interest and fees required under the Second Reallocation Assessment.

The defendants moved for partial reconsideration of the January 12 Opinion on February 26, and the motion became fully submitted on May 1.  The defendants moved to dismiss the SAC on

4

May 1, and the motion became fully submitted on May 27.  Both motions are addressed below.  Fact discovery is scheduled to conclude on July 31.

### Discussion

The defendants move to dismiss the reallocation liability claims against Advance Transit and for reconsideration of portions of the January 12 Opinion.  First, they contend that reallocation liability over the Second Reallocation Assessment cannot be imposed on Advance Transit since Advance Transit had been liquidated by 2020, over a year before the mass withdrawal.  Second, they contend that the plaintiffs cannot pursue interest and fees on missed payments for the First Reallocation Assessment because that Assessment has been rescinded.  Finally, they move for reconsideration of that portion of the January 12 Opinion that denied their motion to dismiss the breach of fiduciary duty claim.  Each argument is addressed in turn.

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).

The standard for granting a motion for reconsideration is "strict." Cho v. Blackberry Ltd., 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A party may . . . obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Cho, 991 F.3d at 170 (citation omitted). A motion for reconsideration is not a vehicle to present new facts, issues, or arguments not previously before the Court. United States v. Williams, 102 F.4th 618, 622 n.1 (2d Cir. 2024).

6

I.    Reallocation Liability

    a. Second Reallocation Assessment

The defendants move to dismiss the SAC's reallocation liability claim pursuant to the Second Reallocation Assessment, just as they did in prior briefing with the FAC's claim concerning the First Reallocation Assessment.  They repeat their argument that reallocation liability may not be assessed on insolvent or liquidated employers, citing 29 C.F.R. § 4219.12(c).  The material difference between the facts before the Court in the January 12 Opinion and here is that the FAC did not plead that Advance Transit had timely requested review or demanded arbitration regarding the assessment.  Just as they did in the FAC, however, the plaintiffs plead in the SAC that Advance Transit failed to make timely payments under ERISA's "pay-first-question-later" regime.  Barrett, 2026 WL 90170, at *4.  Accordingly, as this Court held in the January 12 Opinion, the SAC has stated a claim.  Id.

Under 29 U.S.C § 1399, which governs notice and collection of withdrawal liability, "an employer shall pay" the amount it owes as calculated by the plan sponsor using the methods set forth in the statute.  29 U.S.C § 1399(c)(1)(A)(i).  Upon an employer's withdrawal, the plan sponsor must notify the employer of the amount of its withdrawal liability, establish a schedule

for payment, and demand payment in accordance with that schedule.  Id. § 1399(b)(1).  Should the employer dispute the amount of its liability, it must request a review from the sponsor within 90 days of the sponsor's demand.  Id. § 1399(b)(2)(A).  Under § 1401, if the parties cannot resolve that dispute, arbitration is mandatory, and it must be initiated within 60 days after the earlier of either (1) notification by the plan sponsor of the result of the requested review or (2) 120 days of the date review was requested.  Id. § 1401(a)(1).

ERISA[1] institutes a "pay-first-question-later" regime for employer liability.  Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 263 (2d Cir. 1990) (citation omitted).  "Notwithstanding any request for review or demand of arbitration, the uncured failure to make overdue payments constitutes a default."  Id. at 261 (citing 29 U.S.C. § 1399(c)(5)); see also 29 U.S.C. § 1399(c)(2) (payments must be made notwithstanding any request for review of the amount of the liability); id. § 1401(d) (payments must be made until the arbitrator renders a final decision).

Under ERISA, in any action "to compel an employer to pay withdrawal liability, any failure of the employer to make any

---

[1] As amended by the Multiemployer Pension Plan Amendments Act of 1980.

withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." Id. § 1451(b).  Section 1145 instructs delinquent employers to make delinquent contributions "in accordance with the terms and conditions" of the relevant plan.  Id. § 1145.  Under § 1132(g)(2), a plan sponsor is entitled to attorney's fees, liquidated damages, and interest on unpaid contributions.  Id. § 1132(g)(2).

Pension Benefit Guaranty Corporation ("PBGP") regulations on withdrawal liability are set forth at 29 C.F.R. § 4219.  They define reallocation liability as "the amount of unfunded vested benefits allocated to an employer in the event of a mass withdrawal."  29 C.F.R. § 4219.2(b).  The detailed method for calculating reallocation liability is set forth in 29 C.F.R. § 4219.15.  Section 4219.12, which governs the liability of employers upon mass withdrawal, states the following:

> An employer shall be liable for reallocation liability
> if the employer withdrew pursuant to an agreement or
> arrangement to withdraw from a multiemployer plan from
> which substantially all employers withdrew pursuant to
> an agreement or arrangement to withdraw, or if the
> employer withdrew after the beginning of the second
> full plan year preceding the termination date from a
> plan that terminated by the withdrawal of every
> employer, and, as of the reallocation record date --
>
> (1) The employer has not been completely liquidated or
> dissolved.

29 C.F.R. § 4219.12(c).

9

The plaintiffs allege that the Funds timely notified Advance Transit of its reallocation liability under the Second Reallocation Assessment.  Although Advance Transit timely requested review of its liability and, as of the filing of the SAC, is within the statutory deadline to commence arbitration proceedings to challenge the Second Reallocation Assessment, the plaintiffs have pled that it violated its statutory obligation to make timely payments under ERISA's "pay-first-question-later" regime.  This is sufficient to assert a claim for reallocation liability.  The adequacy of the defendants' asserted defense -- that Advance Transit cannot be held liable for reallocation liability under 29 C.F.R. § 4219.12(c) -- will be determined at a later stage of these proceedings.[2]

b. First Reallocation Assessment

The defendants also argue that the plaintiffs cannot pursue interest and liquidated damages regarding the now-rescinded First Reallocation Assessment.[3]  But, because ERISA contemplates

---

[2] Because the SAC has pleaded a cause of action, it is unnecessary to reach the plaintiffs' additional argument that issues of statutory interpretation are reserved for arbitration.

[3] The defendants make this argument pursuant to Rule 12(b)(1), Fed R. Civ. P, for lack of subject matter jurisdiction.  Since there is no ground to question the existence of jurisdiction, the Court construes this argument under Rule 12(b)(6), Fed R. Civ. P, for failure to state a claim.  See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016).

statutory penalties for violating its "pay-first-question-later" regime, the plaintiffs may continue to pursue this relief and the motion to dismiss fails.[4]

As noted above, ERISA demands that employers must make payments notwithstanding any requests for review and until the arbitrator renders a final decision.  See 29 U.S.C. § 1399(c)(2); id. § 1401(d).  Accordingly, the statute contemplates that plan sponsors are entitled to interest, liquidated damages, and other fees in connection with delinquent payments and in addition to those underlying payments.  Id. § 1132(g)(2).  Because the plaintiffs may pursue such relief under the statute, the motion is denied.

Adopting the defendants' position that the recission of a reallocation liability assessment strips the Funds of the ability to pursue interest and other fees on missed payments for that assessment would reward Advance Transit for nonpayment of the underlying payments of the First Reallocation Assessment. That result is inconsistent with ERISA's "pay-first-question-later" regime.  At bottom, the plaintiffs may pursue damages for fees associated with violations of that regime.

---

[4] The defendants have abandoned in their reply brief their argument that the plaintiffs are judicially estopped from arguing that their request is not moot.

II.    Breach of Fiduciary Duty

Finally, the defendants seek reconsideration of the denial of their motion to dismiss the breach of fiduciary duty claim against defendant Kenneth Barrett.[5]  See Barrett, 2026 WL 90170, at *5.  They do not, however, purport to have identified intervening case law or new evidence.  Instead, they contend that the January 12 Opinion "overlooked" their argument that the three-year statute of limitations for delinquent contributions began to run when the Funds sued for those contributions in 2019.

The defendants have not identified any clear error.  As the January 12 Opinion explained, the motion was denied for "several reasons."  Id.  Among them, the January 12 Opinion noted that the Trustees rely on the six-year statute of limitations for claims of fraud.  See id.; 29 U.S.C. § 113(2).  The defendants argue that the Trustees have not pled fraud with the particularity required by Rule 9(b), Fed. R. Civ. P.  The defendants are wrong, and in any event, a motion for reconsideration does not permit a party to supplement its earlier motion with new arguments.  Williams, 102 F.4th at 622 n.1.

---

[5] The breach of duty claim demands from Kenneth Barrett the delinquent contributions and withdrawal liability owed by Advance Transit.

12

## Conclusion

The defendants' February 26, 2026 motion for reconsideration is denied.  The defendants' May 1, 2026 motion to dismiss is denied.

Dated:    New York, New York
          June 9, 2026

_____
DENISE COTE
United States District Judge

13